JERRY SHEA *vs.* AETNA LIFE INSURANCE COMPANY.

Suffolk.    January 18, 1935. — December 9, 1935.

Present: RUGG, C.J., CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Insurance*, Disability, Group insurance, Construction of policy, Insured, Beneficiary, Cancellation, Premium. *Contract*, Parties, Consideration, Of employment. *Practice, Civil*, Parties.

An employee who applied for insurance under a policy of group disability insurance taken out by his employer and who was certified by the insurer to be insured and contributed to the employer part of

the premiums paid by the latter to the insurer, was, under the terms of the documents and on the facts, a party to the contract of insurance and the promisee of the promise by the insurer to pay benefits on account of his disability, and furnished consideration for such promise; he was also the beneficiary of the disability benefits though no one was named in the contract as such and his wife was named as "death beneficiary"; and he was the proper party to maintain an action against the insurer for such benefits.

Inability of an employee to do his work and consequent excuse to his employer not to pay him does not necessarily terminate the relation of employer and employee.

A provision of a policy of group disability insurance taken out by an employer, that an employee insured thereunder should be deemed "totally and permanently disabled" within the requirement of the policy if, among other things, "due proof be furnished the Company after such [total] disability has existed for a period of six months," did not mean that existence of total disability for six months should be a condition precedent to the liability of the insurer for the disability benefits, but merely that it should be an essential element in proving the permanent nature of the disability as of the time it arose, and a condition precedent to the payment of the benefits; and where an employee became "totally and permanently disabled" within the meaning of the policy at a time when he was still in the employer's employ and insured under the policy, the insurer's liability attached as of that time and he was subsequently entitled to recover the benefits, though within six months after his becoming so disabled the employer terminated the employment because of the disability and attempted thereupon to cancel the employee's insurance because of the termination of employment: the attempted cancellation was ineffective.

Where a policy of group disability insurance taken out by an employer provided for payment of premiums to the insurer by the employer and for contribution to such premiums by the insured employees to the employer, with a right in the employer to cancel any employee's insurance upon his failure to make his contributions, such failure, in the absence of such cancellation, did not affect the employee's right against the insurer to recover the benefits payable under the policy.

CONTRACT. Writ dated March 16, 1933.

The action was tried in the Superior Court before *O'Connell*, J.

*R. E. McCarthy*, (*R. A. Shea* with him,) for the plaintiff.
*A. S. Allen*, for the defendant.

FIELD, J. This is an action of contract brought by the plaintiff, a former employee of the Franklin Motor Car Company, herein referred to as the employer, against the Aetna Life Insurance Company, herein referred to as the company, to recover total and permanent disability bene-

fits under a policy of so called group insurance issued by the company to the employer. The jury in answer to special questions submitted to them found — and these findings are not challenged — that the plaintiff was not, "prior to April 26, 1932, totally disabled from pursuing any occupation for wages or profit," but that "for at least six months after April 26, 1932," he was so totally disabled and that such total disability has "continued to the present date" and will "presumably continue for the rest of his life." The judge, on motion therefor, directed a verdict for the defendant, subject to the plaintiff's exception, and reported the case for the determination of this court in accordance with a stipulation of the parties that if the verdict was directed rightly judgment is to be entered thereon, "otherwise judgment is to be entered for the plaintiff in the sum of one thousand dollars with interest from March 16, 1933, the date of the writ."

The defendant contends that the verdict for it was directed rightly, on the grounds (a) that the plaintiff was not the proper party to maintain the action, (b) that the plaintiff's insurance was terminated before he gave notice of any claim of disability, and (c) that the plaintiff defaulted in his payments. The direction of the verdict cannot be sustained on any of these grounds.

A policy of so called group insurance purporting to have been issued by the company to the employer, dated January 7, 1924, was introduced in evidence. By this policy the company, in consideration of the application of the employer and the payment of an annual premium, agreed to pay a certain amount — $1,000 in the case of an employee of the plaintiff's class — on due proof of the death of any insured employee of the employer. And the policy contained these provisions among others: "Employees . . . entering service after the policy date will be eligible for insurance upon completion of six months of continuous service. Insurance hereunder will be effective only for eligible employees who make written application therefor and agree to contribute the required portion of the premium to the employer. Employees who apply to the employer for insurance here-

under prior to the expiration of ninety days from the date
they are (or become) eligible therefor will be insured with-
out evidence of insurability . . . if the employee is not
eligible for insurance on the policy date, insurance shall be
effective from the date he becomes eligible if he applies for
insurance prior thereto . . . . The employer shall furnish
the Company with proper application (on the Company's
form) for all employees who duly apply for insurance here-
under . . . . At the end of the first term, and at the end of
each subsequent premium paying period, the employer
may at his option continue this policy by paying in advance
. . . the premium for the insuring age attained at the com-
mencement of the policy year by each and all insured . . . .
A grace of thirty-one days, during which the policy will
remain in full force, will be allowed in the payment of all
premiums except the first. The employer may effect the
cancellation of insurance upon any employee insured here-
under upon or at any time after termination of employ-
ment or failure to make the required premium contribution
for such insurance by returning the card for such individual
insurance with the form thereon entitled 'Notice of Discon-
tinued Employment' (which form the employer may amend
to read 'Notice of failure to pay the required premium con-
tribution for this insurance') properly filled out and signed
by the employer. . . . Upon request . . . for discontin-
uance of insurance upon any life insured hereunder, insur-
ance upon such life shall cease. . . . [Provision is made for
the computation of unearned premiums.] The Company
will issue to the employer for delivery to each employee
whose life is insured under this policy an individual cer-
tificate setting forth a statement as to the insurance pro-
tection to which the employee is entitled and to whom it is
payable . . . . If total disability of any employee entitled
to insurance under the schedule of insurance contained in
this policy begin before age sixty, and if due proof be fur-
nished the Company after such disability has existed for a
period of six months, and if such disability presumably will
during lifetime prevent such employee from pursuing any
occupation for wages or profit, such employee shall be

deemed to be totally and permanently disabled within the meaning of this policy . . . . Upon receipt of due proof at the Home Office of the Company of the total and permanent disability of any employee entitled to insurance under the schedule of insurance contained in this policy, the Company will waive further payment of premium for the insurance upon the life of such disabled employee and will pay immediate disability benefits, in lieu of all other benefits provided for under this policy. . . . This policy, the application of the employer and the individual applications, if any, of the employees insured, constitute the entire contract between the parties hereto."

The application addressed to the company, signed by the plaintiff, was introduced in evidence. It names the plaintiff's wife, Margaret Shea, as "death beneficiary," and contains the statement "I hereby apply for Life Insurance in amount of $1000 in accordance with the terms of the Group Policy issued to my employer, and authorize the deduction of 60c per month from my wages as my contribution toward the cost of this insurance." A certificate signed by the company was also introduced in evidence reciting that the defendant had insured the lives of certain employees of the employer by the group policy of insurance above referred to, that "Under and subject to the terms and conditions of said policy, and the application therefor" the life of the plaintiff was "insured for the sum of one thousand dollars, in favor of Margaret Shea — wife beneficiary," and that "This insurance will be terminated whenever said employee fails to make the required premium contribution or ceases to be in the employ of said employer."

There was evidence that the plaintiff entered the employment of the employer October 26, 1931, and that some insurance premiums were withheld by the employer from his wages or paid by the plaintiff to the employer. The company in reply to a notice to admit facts under G. L. (Ter. Ed.) c. 231, § 69, admitted that the policy of group insurance and the certificate above referred to "became of full force and effect so far as relative to the plaintiff on April 26,

1932." The employer purported to cancel the plaintiff's insurance in August, 1932. The parties agreed that if the company had the right to cancel the policy "it took effect on August 23, 1932, subject also to the grace period of thirty-one days before it could apply." The parties also agreed that "so far as the employer is concerned the policy is on an annual payment basis and . . . payment is made in one lump sum with an adjustment for employees whose insurance might be cancelled. In the case of Jerry Shea and the other . . . employees at that time, there was an advance made by the employer, the Franklin Motor Car Company, and . . . as of the date of the cancellation notice [an amount] was returned as unearned premium."

1. On facts which could have been found and the terms of the policy and of the plaintiff's application rightly interpreted, the plaintiff is a proper party to maintain this action.

The plaintiff, according to the terms of the insurance contract contained in the policy and in the plaintiff's application, was a party to that contract. The policy originally was a contract between the employer and the company. But it contemplated that by making an application for insurance thereunder an employee might become a party thereto. The plaintiff made such an application by which he applied for insurance in accordance with the terms of the policy, and by these terms his application became a part of the insurance contract. See G. L. (Ter. Ed.) c. 175, §§ 24, 134, cl. 2; *Beecey* v. *Travelers Ins. Co.* 267 Mass. 135, 138; *Duval* v. *Metropolitan Life Ins. Co.* 82 N. H. 543, 550; *Smithart* v. *John Hancock Mutual Life Ins. Co.* 167 Tenn. 513, 527. Insurance under the policy, so far as applicable to this plaintiff, was upon his life and against his disability. The policy refers to employees as "insured" thereunder and to "the insurance protection to which the employee is entitled." See G. L. (Ter. Ed.) c. 175, § 134, cls. 2, 4. The premium paid by the employer was in part paid by it for the plaintiff and such payment was impliedly ratified by him by authorizing the deduction of monthly payments from his wages as his "contribution toward the cost of this insurance." In these circumstances

the promise of the company to pay insurance benefits on the death or disability of the plaintiff must be regarded as a promise made to him. Compare *Millard* v. *Brayton,* 177 Mass. 533. And without minute analysis of the situation it is enough to say that the payment of premiums by the employer, the application for insurance under the policy by the plaintiff, including authorization to the employer to withhold amounts from his wages on account of such premiums, and the actual withholding of such amounts or payment thereof by the plaintiff to the employer, furnish ample consideration to support this promise of the company. See *Millard* v. *Brayton,* 177 Mass. 533; *Lewis* v. *Metropolitan Life Ins. Co.* 178 Mass. 52, 54; see also *Palmer Savings Bank* v. *Insurance Co. of North America,* 166 Mass. 189, 195–196; *Robinson* v. *Nutt,* 185 Mass. 345, 348–349; *Hare & Chase, Inc.* v. *Commonwealth Discount Corp.* 260 Mass. 134, 136. American Law Inst. Restatement: Contracts, § 75, subsection 2. Consequently, the plaintiff was the person insured under the contract.

No person is specifically named in the insurance contract as the beneficiary of disability benefits payable thereunder. Neither the employer nor the plaintiff's wife is so named. Whether, even if the employer had been so named, it would have been entitled to the disability benefits need not be decided. Compare *Carruth* v. *Aetna Life Ins. Co.* 157 Ga. 608, 616. At least under the insurance contract against disability of the plaintiff made with the plaintiff as the insured person, though the employer is also a party to the contract, the employer is not by implication the beneficiary of disability benefits. And the plaintiff's wife, though named as "death beneficiary" under the insurance contract, is not for that reason also the beneficiary of disability benefits. See *Foster* v. *North Carolina Mutual Life Ins. Co.* 150 S. C. 482, 489. The clear implication from the contract of the company with the plaintiff for insurance against his own disability, which names no beneficiary for disability benefits, is that the plaintiff is such beneficiary. *Lewis* v. *Metropolitan Life Ins. Co.* 178 Mass. 52, 54. *Pettit* v. *Prudential Ins. Co.* 231 Mass. 394, 396.

It follows that the plaintiff is the proper party to maintain this action in his own name, either at common law as the person insured or under G. L. (Ter. Ed.) c. 175, §§ 111, 125, as the beneficiary. See *Johnson* v. *Inter-Ocean Casualty Co.* 112 W. Va. 396, 397.

2. The direction of the verdict for the defendant cannot be sustained on the ground that the plaintiff's insurance was terminated before he gave notice to the company of any claim of disability.

The company's contention on this point is in substance that the insurance contract as to the plaintiff was cancelled by the employer before the liability of the company for disability benefits attached. The company contends that the employer had a right to cancel the policy as of August 23, 1932, or at least as of thirty-one days thereafter, but that even if it had no such right to cancel the policy as of that time such policy was effectively cancelled as between the plaintiff and the company.

The burden rested on the plaintiff of proving that the policy was in force as to him at the time liability thereunder for disability benefits attached by reason of his total and permanent disability. *Kowalski* v. *Aetna Life Ins. Co.* 266 Mass. 255, 261–262.

On the special findings, the admissions of the company and the evidence, it could have been found that the plaintiff became totally and permanently disabled after the policy became in force as to him — April 26, 1932 — while he was employed by the employer, while neither the employer nor the plaintiff was in default as to premiums and before the purported cancellation of the policy.

There was evidence that, though the plaintiff did not work for the employer after April, 1932, he was kept on the employer's pay roll until July 23, 1932, that in the period after April, 1932, extending into July, 1932, from time to time he reported to the employer his inability to work, and that the plaintiff's employment was terminated July 23, 1932. It could have been found that his employment was not terminated before that date. Though inability of an employee to perform the work for which he is

employed may excuse performance by him and his non-performance may excuse payment by the employer (*O'Connor* v. *Briggs*, 182 Mass. 387, Williston, Contracts, § 1940), such inability or failure to work because of it does not necessarily terminate the relation of employer and employee within the meaning of the policy. See *Johnson* v. *Walker*, 155 Mass. 253, 255; *Kowalski* v. *Aetna Life Ins. Co.* 266 Mass. 255, 261; *Thompson* v. *Pacific Mills*, 141 S. C. 303, 309–310. Not only is there no evidence of any act or intention on the part of the employer to terminate the relation of employer and employee before July 23, 1932, but there is evidence negativing any such act or intention. Moreover, it would be unreasonable to interpret the insurance contract in such a way that the existence of total disability of an employee, later shown to be permanent, against which the contract purports to insure, *ipso facto* terminates the employment so as to destroy or permit the employer to destroy the very protection which the contract purports to give.

There was evidence that the premium payable by the employer covering insurance on the plaintiff under the policy was paid in full by the employer in advance, and that the required contributions of the plaintiff toward the cost of such insurance to the end of July, 1932, either were withheld by the employer from the plaintiff's wages or paid to the employer by the plaintiff. Furthermore, it could have been found on the basis of the specific findings and the evidence of the plaintiff's inability to work that he became totally disabled not earlier than April 26, 1932, and not later than July 23, 1932, while he was employed by the employer, and that this total disability was permanent.

The liability of the company to pay disability benefits to the plaintiff attached when he became totally and permanently disabled between April 26, 1932, and July 23, 1932, though the payment of such benefits was subject to the condition precedent that the permanent nature of the disability be proved in the manner prescribed by the insurance contract. The existence of his total disability "for a period of six months" was an essential element of proof of

permanent disability and, consequently, fixed the time of payment of the disability benefits since such proof could not be made until "after such disability has existed" for that period. See *Kimel* v. *Missouri State Life Ins. Co.* 71 Fed. Rep. (2d) 921, 924. The language of the contract, read in the light of the statute authorizing it (G. L. [Ter. Ed.] c. 175, § 24), implies that the existence of total disability for this period is not a condition precedent to liability but, rather, is evidential of the permanent nature of the disability as of the time it came into existence. G. L. (Ter. Ed.) c. 175, § 24, authorizes contracts for the payment of special benefits if "the insured . . . becomes totally and permanently disabled from any cause" and not for any lesser disability. *Mutual Benefit Life Ins. Co.* v. *Commissioner of Insurance*, 271 Mass. 365. And this statute provides that the contract "shall define what shall constitute total and permanent disability." This requirement of definition does not permit the substitution of the risk of a total disability not permanent, however long continued, for the risk of a total and permanent disability which may be insured against, but, rather, requires the adoption of an authoritative rule as to the facts essential to proof of the existence of "total and permanent disability." The contract in the present case conforms to the statute so construed. By its provisions the conditions on which an "employee entitled to insurance" "shall be *deemed* to be totally and permanently disabled within the meaning of this policy" are (a) that the "total disability" of such employee "*begin* before age sixty," (b) that "*due proof* be furnished the Company after such disability has existed for a period of six months" and (c) that "such disability *presumably* will during lifetime prevent such employee from pursuing any occupation for wages or profit." (Italics ours.) These provisions must be construed reasonably. And it would be unreasonable to construe them as meaning that the liability to pay disability benefits under the contract does not attach until after total disability has existed for a period of six months since, on that construction, the employee would not be insured against a total disability begin-

ning at any time during the last six months of the term of the insurance contract, and it would be possible for the employer in every case, by terminating the employment because of the total disability of the employee and cancelling the insurance because of such termination of employment, to deprive the employee of benefits under the insurance contract on account of such total disability. See *Murray* v. *Metropolitan Life Ins. Co.* 145 Miss. 266, 285–286; *Smithart* v. *John Hancock Mutual Life Ins. Co.* 167 Tenn. 513, 521–522.

There is nothing in the insurance contract which makes notice to the company of the existence of total disability a condition precedent to the liability of the company to pay disability benefits, though due proof is required, if not waived, as a condition precedent to the collection of such benefits.

The evidence tended to show that the employer attempted to cancel the insurance because of the previous termination of the plaintiff's employment. If, however, as could have been found, the plaintiff became totally and permanently disabled while employed by the employer and while the insurance contract was in force, the liability for disability benefits then attached and the employer could not thereafter cancel such insurance because of the termination of the plaintiff's employment, at least where, as could have been found, such employment was terminated by reason of the plaintiff's total disability. *Prudential Ins. Co.* v. *Cox*, 254 Ky. 98. *Murray* v. *Metropolitan Life Ins. Co.* 145 Miss. 266. *Turley* v. *John Hancock Mutual Life Ins. Co.* 315 Penn. St. 245, 249. Furthermore, if, as could have been found, there was no "failure" on the part of the plaintiff "to pay the required premium contribution for this insurance" prior to the termination of his employment by reason of his total disability, the insurance could not have been cancelled by the employer for failure to make such contribution. The provisions for such contribution contemplate deductions thereof from the plaintiff's "wages" and by necessary inference were inapplicable after his employment terminated by reason of his total disability. It

is unnecessary to consider whether on any other ground the employer was precluded from cancelling the plaintiff's insurance for failure to contribute to the cost of his insurance. Consequently the attempted cancellation was made ·without right and was not effective even as against the company. The company was a party to the insurance contract, including the provision for cancellation of insurance thereunder, and was bound by its terms. *Beecey* v. *Travelers Ins. Co.* 267 Mass. 135, 138.

3. The direction of the verdict for the defendant cannot be sustained on the ground that the plaintiff defaulted in his payments.

Under the insurance contract ·payment of premiums to the company covering insurance to the plaintiff was to be made by the employer and the plaintiff was to contribute to the employer toward the cost of his insurance. The employer was not in default with respect to such payment of premiums. The provision in the policy for waiver by the company of further payment of premiums upon receipt by it of "due proof" of "total and permanent disability" of an employee applies to payment of premiums by the employer but not to contribution by the employee toward the cost of his insurance. The case of *Bergholm* v. *Peoria Life Ins. Co.* 284 U. S. 489, therefore, is inapplicable. Though the provision for such contribution is included in the contract to which the company was a party, such contribution was to be made to the employer and the remedy for the employee's "failure to make the required premium contribution." was that the employer "effect the cancellation of insurance" on such employee. Apart from such cancellation, which, as could have been found, was not effectively made in this case, failure of the employee to contribute did not affect his rights to benefits as against the company.

The company admitted that demand was made upon it by the plaintiff "for the benefit payable under the clause providing compensation for total and permanent disability." And, apparently by reason of an admission of denial of liability on the part of the company, the company makes no

contention that the plaintiff is precluded from recovery by reason of any failure to furnish to the company "due proof" of the "total and permanent disability."   See *Shapiro* v. *Security Ins. Co.* 256 Mass. 358.

It follows that in accordance with the stipulation "judgment is to be entered for the plaintiff in the sum of one thousand dollars with interest from March 16, 1933, the date of the writ."

*So ordered.*